Citation Nr: 1334647 
Decision Date: 10/30/13 Archive Date: 11/06/13

DOCKET NO. 13-13 278 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to an initial, compensable rating for a right knee injury/strain status post anterior cruciate ligament (ACL) reconstruction.


ATTORNEY FOR THE BOARD

Sarah Plotnick, Associate Counsel



INTRODUCTION

The Veteran had active military service from September 2008 to October 2010.

This appeal to the Board of Veterans' Appeals (Board) arose from an October 2012 rating decision in which the RO granted service connection and assigned an initial 0 percent (noncompensable rating) for right knee disability (characterized as reflected on the title page), effective June 30, 2011. In November 2012, the Veteran filed a notice of disagreement (NOD). In a November 2012 rating decision, the RO assigned an earlier effective date of October 31, 2010 for the award of service connection for the right knee disability. A statement of the case (SOC) was issued in April 2013, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in May 2013.

Because the Veteran disagreed with the initial rating assigned following the award of service connection for a knee disability, the Board has characterized this claim in light of the distinction noted in Fenderson v. West, 12 Vet. App. 119, 126 (1999) (distinguishing initial rating claims from claims for increased ratings for already service-connected disabilities).


FINDINGS OF FACT

1. All notification and development action needed to fairly adjudicate the claim on appeal has been accomplished.

2. Since the October 2010 effective date of the award of service connection, the Veteran's service-connected right knee disability has been manifested by extension to 0 degrees and flexion to 140 degrees, with no objective evidence of pain on motion; however, he has consistently complained of experiencing daily right knee pain, increased during flare-ups and with weather changes, with associated functional loss.

3. The schedular criteria are adequate to rate the knee disability under consideration at all points pertinent to this appeal.


CONCLUSION OF LAW

Resolving all reasonable doubt in the Veteran's favor, the criteria for an initial 10 percent disability rating for a right knee disability have been met. 38 U.S.C.A. § 1155, 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 4.10, 4.31, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes (DC) 5003, 5257, 5260, and 5261 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & Supp. 2012) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2013).

The notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)). As delineated in Pelegrini v. Principi, 18 Vet. App. 112 (2004), after a substantially complete application for benefits is received, proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim(s); (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must ask the claimant to provide any evidence in her or his possession that pertains to the claim(s), in accordance with 38 C.F.R. § 3.159(b)(1). 

The Board notes that, effective May 30, 2008, 38 C.F.R. § 3.159 has been revised, in part. See 73 Fed. Reg. 23,353-23,356 (April 30, 2008). Notably, the final rule removes the third sentence of 38 C.F.R. § 3.159(b)(1), which had stated that VA will request that a claimant provide any pertinent evidence in his or her possession.

VA's notice requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). In rating cases, a claimant must be provided with information pertaining to assignment of disability ratings (to include the rating criteria for all higher ratings for a disability), as well as information regarding the effective date that may be assigned. Id. 

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (here, the RO). Id.; Pelegrini, 18 Vet. App. at 112. See also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id. 

A December 2011 pre-rating letter provided pertinent notice to the Veteran in connection with what was then a claim for service connection for a knee disability. That letter indicated what information and evidence was needed to substantiate the claim, as well as what information and evidence must be submitted by the Veteran and what information and evidence would be obtained by VA. 

Furthermore, although no additional notice for the downstream issues was required under 38 U.S.C.A. § 5103A (see VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004)), in this case, after the award of service connection and the Veteran's disagreement with the initial rating assigned, the April 2013 SOC set forth the criteria for higher ratings for a knee disability (the timing and form of which suffices, in part, for Dingess/Hartman). The Veteran was afforded appropriate opportunity to respond to the additional information provided before the claims file was returned to the Board. 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matter herein decided. Pertinent medical evidence associated with the claims file includes the Veteran's private treatment records and the reports of VA examinations. Also of record and considered in connection with the appeal are various written statements provided by the Veteran. The Board also finds that no additional RO action to further develop the record in connection with the claim for higher rating, prior to appellate consideration, is required.

In summary, the duties imposed by the VCAA have been considered and satisfied. Through various notices of the RO, the Veteran has been notified and made aware of the evidence needed to substantiate his claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claim. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matter herein decided, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998). 

II. Analysis

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3.

A veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, where the question for consideration is entitlement to a higher initial rating assigned following the award of service connection, evaluation of the medical evidence since the effective date of the grant of service connection and consideration of the appropriateness of 'staged rating' (assignment of different ratings for distinct periods of time, based on the facts found) is required. Fenderson, 12 Vet. App. at 126. 

The Veteran's right knee disability has been assigned an initial, noncompensable rating under DC 5260. 

Normal range of knee motion is from 0 degrees (on extension) to 140 degrees (on flexion). See 38 C.F.R. § 4.71, Plate II. 

Under DC 5260, a 0 percent rating is assigned when flexion is limited to 60 degrees. A rating of 10 percent requires limitation of flexion to 45 degrees. A rating of 20 percent requires limitation of flexion to 30 degrees, and a rating of 30 percent requires limitation of flexion to 15 degrees. 38 C.F.R. § 4.71a, DC 5260. Under DC 5261, a 0 percent disability rating is warranted for extension limited to 5 degrees. A 10 percent rating is warranted for extension limited to 10 degrees. A 20 percent rating is warranted for extension limited to 15 degrees. A 30 percent rating is warranted for extension limited to 20 degrees. A 40 percent rating is warranted for extension limited to 30 degrees, and a 50 percent rating requires extension limited to 45 degrees. 38 C.F.R. § 4.71a. 

VA's General Counsel has held that separate ratings under Diagnostic Codes 5260 and 5261 may be assigned if the criteria for a compensable rating for both limitation of flexion and limitation of extension are shown. VAOPGCPREC 09-04 (2004), 69 Fed. Reg. 59990 (2004). 

The Board notes that, when evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995). The provisions of 38 C.F.R. §§ 4.40 and 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). Moreover, under 38 C.F.R. § 4.59, painful motion with joint or periarticular pathology and unstable joints due to healed injury are recognized as productive of disability entitled to at least the minimal compensable rating for the joint. The application of 38 C.F.R. § 4.59 is not limited to arthritis-related claims. Burton v. Shinseki, 25 Vet. App. 1 (2011).

Considering the pertinent evidence in light of the above, and resolving all reasonable doubt in the Veteran's favor, the Board finds that an initial 10 percent but no higher rating for the right knee is warranted from the October 31, 2010 effective date of the award of service connection for the disability.

The Veteran submitted private medical records from July 2009 to May 2010. These records show that the Veteran underwent surgery on his ACL in August 2009. However, these records do not provide evidence regarding the state of the Veteran's disability as of the October 31, 2010, effective date of the award of service connection. 

The Veteran was afforded a January 2012 VA examination. Range of motion testing revealed that the Veteran's range of motion of the right knee was from 0 degrees on extension to 140 degrees on flexion. The examiner noted that repetitive motion did not cause any increase in range of motion loss; hence, there was no functional loss after repetitive motion. There was no objective evidence of instability and no objective evidence of painful motion. The VA examiner noted that the Veteran complained of flare-ups that impact the function of the knee and lower leg. The Veteran reported that he had increased right knee pain in cold or rainy weather. He also stated that he experienced knee pain after sitting for an hour and then attempting to stand. The examiner offer any comment on the extent of functional loss during flare-ups and weather changes.

The Veteran has also provided subjective reports of knee pain. In his November 2012 NOD, the Veteran stated:

I still feel the effects of my injury every day. I still feel pain while doing simple things; when I cut the grass, play with my children and exercise. I can't enjoy playing certain sports like basketball and football, because of my limitations on my knee and the great potential for re-injury. When the weather changes my knee is sore and it takes almost half the day before I can function without a large amount of discomfort. . . . When I perform daily duties, such as running, I feel pain and discomfort in my right knee. When I get into physical altercations with individuals while performing my duties as a Trooper, I feel pain in my right knee and it will always be a weakness that can put me in jeopardy when in a physical exchange. Things as simple as driving in my patrol car for a time and then having to get out in a hurry when arriving on scene causes a large amount of pain as well.

The medical evidence shows that, on examination, range of motion testing revealed full range of right knee motion, with no pain on motion observed. As noted, right knee flexion was 140 degrees, extension was to 0 degrees, and there was no instability. Moreover, repeated testing revealed no additional functional loss. These findings do not warrant assignment of a compensable rating for the right knee under Diagnostic Code 5260 or 5261.

However, as also noted above, during examination and in various statements, the Veteran has reported experiencing pain in the knee with associated functional loss, particularly during flare-ups and with weather changes. Although the examiner did not comment upon the extent of any such functional loss, the Board finds that the Veteran's complaints are tantamount to experiencing painful right knee motion. The Board observes that the only pertinent diagnostic code that provides a rating for painful motion alone is Diagnostic Code 5003. Under DC 5003, degenerative arthritis established by X-ray findings is evaluated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint involved (here, DCs 5260, and 5261). When, however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a 10 percent rating is assignable for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion.

In this case, the medical evidence does not establish that the Veteran has arthritis in his right knee. However, given the Veteran's complaints, and resolving all reasonable doubt in his favor, the Board finds that, by evaluating his disability as analogous to arthritis under Diagnostic Code 5003, the record presents a basis for assigning a 10 percent rating for disability for painful motion. See 38 C.F.R. § 4.71a, Diagnostic Code 5003. The record reflects the Veteran's assertions that he experiences pain every day, and that he has increased pain, and associated functional loss during flare-ups and with weather changes. 

The Board points out that the assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as the veteran's relevant medical history, his current diagnosis, and demonstrated symptomatology. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992).. Moreover, The Veteran is competent as a layperson to describe symptoms such as pain related to his right knee disability. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). Further, as the Board finds no reason to question the veracity of the Veteran's consistent complaints, these assertions are deemed credible. The Board notes that assignment of a 10 percent rating, on these facts, is consistent with DeLuca, as well as with the principles set forth in 38 C.F.R. § 4.59. 

However, no higher schedular rating is assignable. Diagnostic Code 5003 provides for only a 10 percent rating for a major joint. Moreover, even when functional loss during flare-ups and with weather changes is considered, the record (to include the Veteran's own assertions) do not support a finding that the disability meets the criteria for minimum 10 percent rating under Diagnostic Code 5260 or 5261-much less, any even higher rating. The Board also notes that, as the VA examiner found no instability, and there is otherwise no evidence or argument that the Veteran experiences instability; as such, there is no basis for evaluating the disability under Diagnostic Code 5257, pursuant to which recurrent subluxation, or lateral instability, is evaluated is not applicable here, In a related vein, the Board notes that, while separate ratings may be assignable for arthritis resulting in limited or painful motion and instability, under Diagnostic Codes 5003 and 5257 (see VAOPGCPREC 23-97, 62 Fed. Reg. 63,604 (1997) and VAOPGCPREC 9-98, 63 Fed. Reg. 56,704 (1998)), pertinent to the current claim, such separate ratings are not warranted, where, as here, the Veteran has not asserted, or manifested, any right knee instability and there is no actual x-ray evidence or assessment of arthritis in the right knee. As noted, the rating under Diagnostic Code 5003 is by analogy, only.

Furthermore, absent evidence of any actual or effective ankylosis in the knee, dislocation of the semilunar cartilage, or impairment of the tibia or fibula, Diagnostic Codes 5256, 5258 and 5262 likewise provide no basis for assignment of a rating in excess of 10 percent. See 38 C.F.R. § 4.71a. The right knee disability also is not shown to involve any other factor(s) warranting evaluation under any other provision(s) of VA's rating schedule.

Additionally, the Board finds that at no point since the October 2010 effective date of the award of service connection has the right knee disability under consideration been shown to be so exceptional or unusual as to warrant the assignment of any higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1).

The threshold factor for extra-schedular consideration is a finding on the part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability at issue are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). See also 38 C.F.R. § 3.321(b)(1); VA Adjudication Procedure Manual, Pt. III, Subpart iv, Ch. 6, Sec. B(5)(c). Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for this disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned rating is therefore adequate, and no referral for extra-schedular consideration is required. See VAOGCPREC 6-96 (Aug. 16, 1996); Thun v. Peake, 22 Vet. App. 111 (2008).

If the rating schedule does not contemplate the claimant's level of disability and symptomatology, and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms" (including marked interference with employment and frequent periods of hospitalization). 38 C.F.R. § 3.321(b)(1). If so, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step: a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Thun, supra.

In this case, the Board finds that the applicable schedular criteria are adequate to rate the disability under consideration at all points pertinent to this appeal. The rating schedule fully contemplates the described symptomatology, and provides for ratings higher than that assigned based on more significant functional impairment. Significantly, there is no medical indication or argument that the applicable criteria are otherwise inadequate to rate the disability. Thus, the threshold requirement for invoking the procedures set forth in 38 C.F.R. § 3.321(b)(1) is not met. See Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

As a final point, the Board notes that, although a claim for a total disability rating based on individual unemployability (TDIU) may be raised in the record as a component of a claim for higher rating (see e.g., Rice v. Shinseki, 22 Vet. App. 447 (2009)), here, there is no evidence or argument indicating that the Veteran's knee disability has rendered him unemployable at any pertinent point. He has reported that he is currently employed as a state trooper. While the Veteran has asserted that he experiences pain while he is working, he has not suggested that he is unable to secure or follow a substantially gainful occupation. As such, a claim for a TDIU due to the right knee disability has not reasonably been raised, and need not be addressed. 

For all the foregoing reasons, the Board concludes that the record supports assignment of a 10 percent, but no higher, rating for the Veteran's right knee disability. The Board has applied the benefit-of-the doubt doctrine in determining that the criteria for 10 percent rating are met, but finds that the preponderance of the evidence is against assignment of any higher rating. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

An initial 10 percent rating for a right knee strain status post ACL reconstruction is granted, subject to the legal authority governing the payment of compensation benefits.



____________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs